IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGE MALCOLM COLE,

     Plaintiff,

            v.

UNITED STATES OF AMERICA,

     Defendant.

Civil Action No.
1:18-cv-05901-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant the United States of America's

motions to exclude Plaintiff's expert, Michael F. Soboeiro, MD [ECF 58], and for

summary judgment [ECF 59]. After careful consideration of the parties' briefing,

the Court **GRANTS** both motions.

## I. BACKGROUND

The following facts are undisputed. Plaintiff George Malcom Cole was

injured during his military service.[1] Cole's injuries resulted in multiple surgeries

and long-term, severe pain in his back, legs, and knees.[2] Cole also suffers from

depression and is diabetic.[3] Cole's primary care physician, Dr. Iglesias, as well as

---

[1]   ECF 64, ¶ 1.

[2]   *Id.*

[3]   *Id.* ¶¶ 3–5.

other doctors at the Department of Veterans Affairs Medical Center (VAMC) worked with Cole on multiple occasions to improve his diet, to ensure he took his insulin as prescribed, and to get his blood sugar levels under control.[4] In 2003 and 2006, Cole was diagnosed and treated for hyperthyroidism.[5] People with diabetes, like Cole, are at risk for frequent styes, which are bumps and swelling on the rim of an eyelid, as well as infections.[6]

On multiple occasions between April 2013 and April 2016, Cole sought medical attention from the VAMC for infections on various parts of his body, including his right ear, his left ear, his right jaw, one of his teeth, and his right eye.[7] The physicians at the VAMC treated Cole's infections with antibiotics, after which each infection resolved, meaning Cole no longer had symptoms or an inflammatory response to the bacteria.[8]

---

[4]   *Id.* ¶ 6.

[5]   *Id.* ¶¶ 8–9.

[6]   *Id.* ¶¶ 7, 39–41.

[7]   *Id.* ¶¶ 12, 27, 30, 36, 44, 47.

[8]   *Id.* ¶¶ 12, 27, 29, 30, 31, 36, 44, 46, 48–49, 63–64.

On March 9, 2016, Cole was seen and treated for a stye on his left eye.[9] Cole was referred to an eye specialist but was unable to schedule an appointment.[10] Then, on March 23, 2016, Cole was treated for a stye on his right eye.[11] On April 24, 2016, Cole visited Atlanta's VAMC's Emergency Room, complaining of pain and swelling around his right eye.[12] The ER doctor, Dr. Shaib, treated the infection on Cole's right eye with antibiotics and ointment.[13] Dr. Shaib ordered a CT scan of Cole's eye.[14] The CT scan showed preorbital swelling, which could evidence orbital cellulitis, a serious eye infection that usually is accompanied by double vision and a fever.[15] Based on the swelling, Dr. Shaib took a swab of Cole's eyelid to determine if he was colonized with MRSA, meaning MRSA bacteria was living on the surface of his skin.[16] Cole was directed to return to the ER if his symptoms worsened or if he developed double vision, headaches, a fever, or chills.[17]

---

[9] *Id.* ¶ 38.

[10] *Id* ¶ 42.

[11] *Id.* ¶ 44.

[12] *Id.* ¶ 47.

[13] *Id.* ¶ 48.

[14] *Id.* ¶ 51.

[15] *Id.* ¶¶ 51, 67.

[16] *Id.* ¶ 52.

[17] *Id.* ¶ 53.

On April 26, Cole attended a scheduled appointment with Dr. Iglesias.[18] Cole reported to Dr. Iglesias that his eye pain and swelling was improving substantially after his visit to the ER.[19] Cole also reported to his dentist that his face infection was improving and his tooth area felt better.[20] Dr. Iglesias was unaware of the MSRA culture results during Cole's April 26 appointment.[21] On April 30, Dr. Shaib obtained the results and determined that Cole was likely colonized with MRSA.[22] When Dr. Shaib informed Cole of the results, Cole reported that he was improving substantially.[23]

On May 17, 2016, Cole had a nurse visit to check his blood pressure and blood sugar, and he reported styes in both of his eyes.[24] The nurse recommended warm compresses and referred him again to the eye specialist.[25] On May 24, 2016, Cole went to the VAMC ER for an infection on his left hand, for which he was

---

[18]  *Id.* ¶ 59.

[19]  *Id.* ¶ 60.

[20]  *Id.* ¶ 62.

[21]  *Id.* ¶ 61.

[22]  *Id.* ¶ 56.

[23]  *Id.* ¶ 57.

[24]  *Id.* ¶ 71.

[25]  *Id.*

prescribed antibiotics.[26] This infection resolved.[27] Cole also visited a VAMC nurse on July 19 and August 8 complaining of eye swelling.[28]

On August 14, 2016, after a visit to the VAMC ER, Cole was admitted to the VAMC hospital for neck cellulitis and a small superficial abscess.[29] While in the hospital, Cole was seen by an infectious disease doctor and was treated for a MSRA infection.[30] Following this first hospital stay, Cole did not visit any VAMC physician until he was admitted to the Rockdale Hospital for a serious MSRA infection and sepsis on December 2, 2016.[31]

Cole filed suit against the United States under the Federal Torts Claims Act (FTCA) on December 27, 2018, for negligence in connection with the care given by the VAMC.[32] Cole alleges that the VMAC physicians were negligent in failing to diagnose his MRSA infection earlier, which resulted in severe complications,

---

[26] *Id.* ¶ 73.

[27] *Id.* ¶ 74.

[28] *Id.* ¶¶ 76–77.

[29] *Id.* ¶ 78.

[30] *Id.* ¶¶ 78–80.

[31] *Id.* ¶¶ 88, 123.

[32] ECF 1, ¶ 1.

prolonged hospitalization, surgery, and permanent injuries.[33] Cole retained Michael F. Soboeiro, MD, as an expert.[34] Dr. Soboeiro opined that Dr. Iglesias violated the applicable standard of care by failing to diagnose the MSRA infection before or during Cole's April 26, 2016 appointment. Dr. Soboeiro claims that Dr. Iglesias should have consulted an infectious disease specialist based on the report that Cole potentially had orbital cellulitis, and that he should have changed Cole's treatment after Cole received the MSRA culture results on April 30.[35] Dr. Soboeiro has not identified any other breaches of care by any other VMAC physicians.

The Government moves to exclude Dr. Soboeiro as an expert,[36] arguing that he is unqualified,[37] and that his opinions are unreliable and unhelpful.[38] This motion is fully briefed.[39] The Government also moves for summary judgment, arguing that Cole cannot establish the elements of his claim absent expert

---

[33]   *Id.* ¶ 27.

[34]   ECF 41.

[35]   ECF 41-1, ¶¶ 4–5; ECF 64, ¶¶ 26, 28, 87, 114.

[36]   ECF 58.

[37]   *Id.* at 7–10.

[38]   *Id.* at 11–24.

[39]   ECF 61 (Cole's opposition to the motion to exclude); ECF 67 (the Government's reply in support of its motion to exclude).

testimony and that, regardless, he fails to establish a breach or proximate cause.[40]

This motion is also fully briefed.[41] The Court considers each motion in turn.

## II.    MOTION TO EXCLUDE

Cole's expert, Dr. Soboeiro, offers five opinions regarding Dr. Iglesias's alleged breaches of care: (1) that Cole was infected with MRSA prior to his August 17, 2016 hospital admission but, because of an incorrect diagnosis, he was inappropriately treated for it; (2) that Dr. Iglesias improperly failed to diagnose and treat Cole for MRSA after he was diagnosed with possible orbital cellulitis or after his culture results reflecting a MRSA colonization; (3) that Dr. Iglesias should have been aware that Cole was likely to have difficulty treating the MRSA infection in light of his diabetes; (4) that Dr. Iglesias failed to consult an infectious disease specialist; and (5) that the extreme delay in diagnosis and appropriate treatment allowed the MSRA infection to spread and caused Cole unnecessary

---

[40]    ECF 59, at 1.

[41]    ECF 64 (Cole's response to the Government's statement of material facts);
ECF 66 (Cole's opposition to the Government's motion for summary
judgment); ECF 56 (Cole's statement of material facts); ECF 68
(the Government's reply in support of its motion for summary judgment); ECF
69 (the Government's response to Cole's statement of material facts); ECF 70
(Cole's reply in support of his statement of material facts).

harm.[42]  Dr. Soboeiro's opinions relate only to Dr. Iglesias's treatment of Cole prior to Cole's hospital admission on August 17, 2016.

Dr. Soboeiro does not make clear when Dr. Iglesias's treatment breached the relevant standard of care and, notably, critical parts of Dr. Soboeiro's written opinion are contradicted by the undisputed facts in this case. For example, Dr. Soboeiro bases his opinion on the fact that Dr. Iglesias and his staff saw Cole several times after the MSRA culture was taken by Dr. Shaib.[43] However, it is undisputed that Dr. Iglesias did not personally treat Cole after Cole's April 26, 2016 appointment, which occurred before the MSRA culture results were completed.[44] Dr. Soboeiro also reported that Cole was not informed that "he had MSRA until August 2016,"[45] but the undisputed facts show that Dr. Shaib contacted Cole about the culture results and that Cole reported he was improving substantially.[46] To remedy the inconsistencies, Cole purports to supplement the written report with Dr. Soboeiro's deposition. Even under the Court's generous

---

[42]  ECF 41-1, at 4–6.

[43]  *Id.* at 5.

[44]  ECF 64, ¶¶ 61, 86.

[45]  ECF 41-1, at 4.

[46]  ECF 64, ¶ 57.

characterization of Dr. Soboeiro's opinions, however, it finds that his testimony must be excluded as his methodologies are undefined and unreliable.

## A.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert witness evidence and provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note to 2000 amendment.

"As explained by the Supreme Court, the purpose of the expert admissibility rules is to enlist the federal courts as 'gatekeepers' tasked with screening out 'speculative' and 'unreliable expert testimony.'" *Moore v. Intuitive Surgical, Inc.*, 995 F.3d 839, 850 (11th Cir. 2021) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) and *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335

(11th Cir. 2010)). In this role, however, "courts must remain chary not to improperly use the admissibility criteria to supplant a plaintiff's right to a jury trial: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596).

Courts in this circuit consider three factors on a *Daubert* challenge:

(1) whether the expert witness is qualified to testify competently regarding the matters he intends to address;

(2) whether the methodology by which the expert witness reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and

(3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id.* at 850–51 (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). Though "there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Because the extent of the United States' liability in FTCA cases is determined by reference to state law, the Court must also consider Georgia's evidentiary rules for expert physician testimony. *Dutton v. United States*, 621 F. App'x 962, 966 (11th Cir. 2015) ("Georgia's evidentiary rules for a physician's expert testimony are so intimately intertwined with its malpractice laws that the rules must apply in an FTCA case for medical malpractice.").

> [T]o qualify as an expert in a medical malpractice action under OCGA § 24–7–702(c), the witness must (1) have actual knowledge and experience in the relevant area through either "active practice" or "teaching" and (2) either be in the "same profession" as the defendant whose conduct is at issue or qualify for the exception to the "same profession" requirement set forth in subparagraph (c)(2)(D). Under the exception, a proffered expert who is a physician is permitted to qualify as an expert as to a non-physician health care provider.

*Hankla v. Postell*, 293 Ga. 692, 694–95 (2013).

### B.    Discussion

The Government argues that Dr. Soboeiro is not qualified to opine about the diagnosis and treatment of an infectious disease because he is an internal medicine clinician, not an infectious disease physician.[47] Relatedly, the Government argues that Dr. Soboeiro's opinions are unreliable because he did not consult any other

---

[47]    ECF 58, at 7.

physicians or medical texts in coming to his opinion, and instead bases his opinion on his experience working on a team where an individual had an MSRA infection that waxed and waned.[48] The Government also argues that Dr. Soboeiro's testimony is unhelpful because his opinions, that early diagnosis and specialist evaluations can prevent future medical injuries, are obvious and do not help resolve any issue of fact.[49] The Court agrees with the Government that Dr. Soboeiro's testimony should be excluded.

### i.     Qualifications

Dr. Soboeiro is a physician specializing in internal medicine.[50] He has over 25 years of experience in in-patient and out-patient clinical settings, including 20 years of experience caring for in-patients with acute and chronic medical issues, such as complicated MSRA infections.[51] Dr. Soboeiro is not certified for, and does not consider himself an expert in, endocrinology, emergency medicine, or

---

[48]   *Id.* at 12.

[49]   *Id.* at 22.

[50]   ECF 41-1, at 2.

[51]   ECF 41-1, at 2; ECF 57-1, at 134.

infectious disease.[52] Cole contends that this experience qualifies Dr. Soboeiro under the non-stringent *Daubert* standard.[53]

As discussed, however, in addition to the *Daubert* factors, the Court must consider the qualification requirements under O.C.G.A. § 24–7–702(c). Therefore, although Dr. Soboeiro's experience may suffice under the Federal Rules, he must also have practiced or taught for three of the last five years "in the area of practice or specifically in which the opinion is to be given." O.C.G.A. § 24–7–702(c)(2).

Under Georgia's evidentiary standard, Dr. Soboeiro's qualifications are sufficient. He admits that he is not an infectious disease expert and has not practiced in the specific area of infectious diseases.[54] Dr. Soboeiro practices internal medicine and can best be described as a general practitioner.[55] Dr. Soboeiro, therefore, qualifies as an expert to those issues involving general medical practice. Dr. Iglesias is also a general practitioner, and so it is within the realm of Dr. Soboeiro's expertise to opine as to Dr. Iglesias's primary care related decisions, including the decisions not to obtain an infectious disease consult or investigate a

---

[52]   ECF 57-1, at 49–50.

[53]   ECF 61, at 6.

[54]   ECF 64, ¶¶ 90–91.

[55]   *Id.*

potential MSRA diagnosis. These are the decisions Dr. Soboeiro opines on and that underlie Cole's claims. Dr. Soboeiro is qualified to testify as to Dr. Iglesias's treatment of Cole's infections.

### ii.      Reliability

Though he may be qualified to speak to standards of care for general practitioners, the conclusions given by Dr. Soboeiro are not supported by any reliable methodology. To determine whether the foundation of an expert's opinion is reliable, the Court must conduct an "exacting analysis." *Frazier*, 387 F.3d at 1260. The Court can use the same criteria used for assessing reliability of a scientific opinion to evaluate "non-scientific, experience-based testimony," including (1) whether the "theory can be and has been tested," (2) whether the theory has been peer-reviewed or published, (3) the known or potential error rate of the theory, and (4) whether "the technique is generally accepted in" the relevant community. *Id.* at 1262. "Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial." *Id.*

Dr. Soboeiro "offered precious little in the way of a reliable foundation or basis for his opinion." *Id.* at 1265. He did not rely on any treatise, practice guideline, peer-reviewed study, medical literature, or any other written standard

to support his opinions.[56] Dr. Soboeiro relied only on his experience for his opinions,[57] and, therefore, must "explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Id.* Dr. Soboeiro failed to explain how his experience led to his conclusion that Dr. Iglesias breached the applicable standard of care or how that alleged failure proximately caused Cole's injuries. The only specific example Dr. Soboeiro points to in support of his opinion is a single experience "working on a team" where a patient experienced waxing and waning MSRA symptoms.[58]

Moreover, Dr. Soboeiro failed to testify about precisely when Dr. Iglesias should have diagnosed and treated for MRSA or consulted an infectious disease specialist.[59] Dr. Soboeiro's opinion is only that Dr. Iglesias should have taken these steps sometime between January 19 and August 17, 2016.[60] Dr. Soboeiro also

---

[56]   ECF 64, ¶¶ 92, 99–100.

[57]   *Id.* ¶ 61.

[58]   *Id.* ¶ 134.

[59]   ECF 41-1, at 4; ECF 64, ¶ 98.

[60]   ECF 57-1, at 38–39 ("My report does not give a specific date when [the different treatment] should have occurred but it suggests that it should have occurred prior to August 17th of 2016.").

admits that "reasonable doctors could always disagree" as to best practices,[61] and found no basis to dispute the Infectious Disease Society of America's practice guidelines, which conflict with his opinions.[62] The Court cannot find that Dr. Soboeiro's opinions are based on a reliable methodology, particularly because he testified that reasonable practices differ amongst care providers.

To conclude that Dr. Soboeiro's standards for his patients are the only acceptable ones, the Court "would need to take a leap of faith and rely on [his] *ipse dixit* and assurance that his testimony is based on nationally accepted standards." *Dukes v. Georgia*, 428 F. Supp. 2d 1298, 1315 (N.D. Ga.), *aff'd*, 212 F. App'x 916 (11th Cir. 2006). Relying on such naked assurances would be "tantamount to disregarding entirely the reliability prong of the Daubert analysis." *Id.* (doctor's expert testimony unreliable where he failed to specify what he relied on besides his own experience). Cole must offer more than Dr. Soboeiro's word,[63] and he has failed to do so. Fed. R. Evid. 702 advisory committee's note to the 2000 amendment ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'") (quoting *Daubert*, 43 F.3d at 1319).

---

[61]   ECF 57-1, at 86.

[62]   ECF 57-1, at 93–115.

[63]   ECF 57-1, at 85.

Dr. Soboeiro must be excluded as an expert because there is no reliable foundation for his opinion. It is a given that an unreliable opinion would not be helpful to a trier of fact.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment,

"and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477

U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999).

"Credibility determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions," and cannot be made by the

Court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham*

*v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment

for the moving party is proper "[w]here the record taken as a whole could not lead

a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

  **B.**  **Discussion**

  The Government argues that the exclusion of Dr. Soboeiro as an expert is

fatal to Cole's claims because he is required to prove breach of the duty of care and

causation through an expert witness.[64] In addition, the Government argues, Cole

cannot establish that any action taken by Dr. Iglesias proximately caused Cole's

MRSA sepsis and related medical issues.[65] The Court agrees.

---

[64] ECF 59, at 5.

[65] *Id.*

### i.     Breach of the Standard of Care

The Court has ruled that Dr. Soboeiro may not offer his opinions on breach of the standard of care or proximate cause because his methodology is unreliable. The Government is correct that this is fatal to Cole's claims. Even absent Georgia law requiring expert testimony on this issue, Cole relied entirely on the opinions of Dr. Soboeiro to prove that Dr. Iglesias breached his professional obligations, and without this testimony Cole cannot support his claims.

Under Georgia law, there is a rebuttable presumption that "physicians, nurses, and other medical professionals exercise due care and skill in their treatment of a patient based on their education, training, and experience. To overcome the presumption in the typical case, the injured patient must present evidence from expert medical witnesses that the defendants did not exercise due care and skill in performing their services." *Beach v. Lipham*, 276 Ga. 302, 304 (2003). Without Dr. Soboeiro's testimony, Cole cannot overcome the presumption that Dr. Iglesias exercised due care in treating Cole.

Even with Dr. Soboeiro's testimony Cole cannot overcome this presumption. Dr. Soboeiro testified that, at some point between January 19, 2016 and August 17, 2016, Dr. Iglesias should have recognized the signs of a waxing and waning MRSA infection and should have consulted an infectious disease

specialist.[66] This is so, according to Dr. Soboeiro, even though Cole's infections cleared up with each antibiotic treatment and even though the infections occurred on different places of Cole's body, which is inconsistent with an ongoing infection.[67] Dr. Soboeiro also does not explain how Dr. Iglesias should have changed treatment after learning of the MRSA culture results when those results returned after Dr. Iglesias last treated Cole.[68] Nothing in Dr. Soboeiro's testimony overcomes the presumption that Dr. Iglesias exercised due care in treating Cole.

### ii.     Proximate Causation

Cole similarly cannot prove, with or without Dr. Soboeiro's testimony, that Dr. Iglesias's allegedly negligent treatment was the proximate cause of Cole's ultimate injuries.

Under Georgia law, expert testimony is required to establish proximate causation in a medical malpractice action "because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson." *Zwiren v.*

---

[66]   ECF 57-1, at 38–39.

[67]   ECF 64, ¶¶ 83, 140; ECF 57-1, at 134–35.

[68]   ECF 64, ¶¶ 61, 86.

*Thompson*, 276 Ga. 498, 500 (2003). Without Dr. Soboeiro's testimony, therefore, Cole cannot establish proximate cause.

Further, an expert opining on the issue of proximate causation must "state his opinion regarding proximate cause with a reasonable degree of medical certainty." *Id.* at 502 (internal citations and punctuation omitted). Establishing proximate cause with a "reasonable degree of medical certainty" requires more than a "mere possibility" that the medical provider's actions caused the harm. *Id.* Here, aside from Dr Soboeiro's bald assertion that his opinion was given within a reasonable degree of medical certainty,[69] nothing in the undisputed facts support this. First, his vague conclusion that Dr. Iglesias should have done something different prior to Cole's August 2016 hospital visit utterly fails to connect Dr. Iglesias, specifically, to Cole's MSRA infection. Further, Dr. Soboeiro admitted that many circumstances, particularly for diabetics, could lead to a MRSA infection and that it was "possible" Cole's subsequent MSRA infection was a new infection,[70] negating any certainty that Cole had a waxing or waning MRSA infection that Dr. Iglesias failed to recognize. Dr. Soboeiro's testimony simply raises the possibility that Dr. Iglesias's failures led to Cole's MSRA infection,

---

[69]   ECF 59-2, at 4.

[70]   ECF 57-1, at 66–68, 89, 125–26.

sepsis, and related injuries. This does not raise a disputed issue of material fact necessary to overcome summary judgment.

## IV.   CONCLUSION

The Government's motions to exclude Michael F. Soboeiro, MD as an expert [ECF 58] and for summary judgment [ECF 59] are **GRANTED**. Cole's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this the 20th day of September, 2021.

Steven D. Grimberg
United States District Court Judge